## Bowen v. Boughner.

(Decided September 28, 1920.)

Appeal from Kenton Circuit Court
(Criminal Law and Equity Division).

1.  Appeal and Error—Finding of Chancellor.—The finding of the chancellor upon questions of fact will not be disturbed unless his

finding be against the weight of the evidence, in which event a different finding will be made by this court.

2. Mortgages—Absolute Deed as Mortgage.—Where an instrument is intended merely as a security for a debt, it is a mortgage though in form a deed absolute on its face; and where there is doubt as to whether an instrument is a mortgage or conditional sale, the instrument will be considered a mortgage.

3. Mortgages—Improvements.—A mortgagee in possession will not be allowed to make improvements which will render it more difficult for the mortgagor to redeem by charging him with cost of improving the property.

4. Mortgages—Improvements.—A mortgagee in actual personal possession of the mortgaged real estate is chargeable with the rentable value thereof; and the rental value of the property must be determined upon the basis of its condition at the time the mortgagee took possession and not its rental value in its enhanced condition after improvements have been placed on the property by the mortgagee.

JOHN L. RICH for appellant.

B. F. GRAZIANI and L. T. APPLEGATE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Previous to the year 1902 Bowen, then the owner of a tract of land of about 133 acres near Covington, in Kenton county, mortgaged it to one Jefferson Livingston for $2,500.00, and being unable to pay the mortgage Livingston enforced his lien, obtained a judgment for a sale of the land and a sale was had by the master commissioner at which Livingston became the purchaser at the amount of his debt, interest and cost. Before Livingston received a deed for the property Bowen importuned his friend Boughner to assist him in raising enough money to satisfy the judgment debt as well as certain other obligations then owing by Bowen, aggregating $5,100.00. This Boughner consented to do, provided Bowen could raise as much as $2,000.00 on his own account. When Bowen came forward with his $2,000.00 Boughner arranged a loan for $3,100.00, making the $5,100.00 necessary to the extinguishment of Bowen's debts. Shortly thereafter the land was conveyed by the master commissioner to Boughner and one Joseph Knipper to be held by them for the use and benefit of Bowen until he could satisfy the $3,100.00, the time limit being fixed at three years. Bowen was unable to pay the mortgage against his property and it ran along until 1908 when he and Boughner had an accounting. In the meantime Boughner had bought out Knipper and had furnished Bowen money

for taxes, interest, insurance and other items, and when the whole amount was cast up Bowen was found to be due Boughner the sum of $3,850.00, and this amount was agreed upon by them as correct. They then entered into a written contract by which Bowen was to have possession of the land and was to attempt to reduce his indebtedness and was given three additional years in which to raise the money and satisfy the obligation. It was also agreed between the parties that Boughner should have the power to sell and convey the property, or enough of it to satisfy his debt, if he could find a purchaser, and Bowen was to execute and deliver to Boughner a quit claim deed to enable Boughner to make a conveyance. This deed was never delivered, but in December, 1908, Bowen and his wife executed and delivered to Boughner a general warranty deed to the entire property, Boughner paying the grantors another $100.00 at the time of the making of the deed. In February following Bowen again approached Boughner for assistance and they entered into another written contract whereby Bowen was to have the right to repay the amount of money which had been advanced by Boughner and retake the land. Bowen continued in possession of the place until about 1912, when he apparently gave up hope of being able to sell the property for more than the amount owing Boughner and abandoned the place and moved over into Ohio, leaving Boughner in possession of the farm. The farm was run down and in very bad condition. It was full of gulleys and overgrown with shrubs. The buildings were in bad repair and the fencing down. Boughner began to improve it by repairing the buildings, filling the gulleys, sowing part of it in grass, and planting a large number of fruit trees. He rebuilt fencing and otherwise improved the property.

In August, 1915, Bowen returned to Kentucky and instituted this action, seeking to have the deed which he and his wife had executed to Boughner declared a mortgage only on the farm in question; he asked for an accounting with Boughner for the rents and profits of the land, and that certain alleged mortgages which Boughner had placed upon the property be cancelled and held for naught and that Bowen recover of Boughner the property in question subject to the mortgage debt which he owed Boughner.

Boughner answered setting up title to the land in himself and exhibiting his general warranty deed from Bowen and wife of date December 8, 1908. He denied

that the deed was executed as a security for money or that Boughner had any interest or title in the property.

By a second paragraph defendant admitted the execution of the contracts, giving Bowen time in which to raise the money to repay Boughner, but alleged that Bowen wholly and totally failed to carry out his agreements and that Boughner had to provide other money, making a total sum of $3,850.00, and that Bowen after receiving other moneys from Boughner executed and delivered to him the general warranty deed under which Boughner now claims.

Defendant further alleged that he had made necessary and lasting improvements on the farm which greatly enhanced its value after he took possession of same, all this with the knowledge and consent of the plaintiff, and that the farm by reason of said improvements was made worth at least $2,500.00 more than when Boughner received it.

By reply plaintiff Bowen denied that the improvements made on the farm by defendant Boughner were permanent and lasting or of the value of $2,500.00 or any other sum as averred by Boughner.

Both Boughner and Bowen testify at great length, giving in detail all their many transactions from the year 1902 down to the time of the bringing of the action in 1915. They hardly agree upon any point in all their testimony, and but for the writings made a part of the pleadings and evidence the court would be at loss to know just what to believe or what were the real facts in the case. The chancellor referred the matter to the master to "prepare a statement of the accounts between the parties, saying he will charge plaintiff (Bowen) with the indebtedness shown by the contracts of November 4, 1908, and February 4, 1909, and with taxes, insurance and money advanced and repairs paid for by defendant. He will not charge against the plaintiff the cost of planting and cultivating the farm after it came into the possession of defendant nor any added value to the farm by reason of such cultivation. He will credit plaintiff with the value of the use and occupancy by defendant for the years 1912 to date, which value the court fixed at the rate of $240.00 per year. For the balance defendant will be entitled to a judgment and a lien on the property with an order of sale if the debt is not paid within a reasonable time."

The master commissioner made a report allowing Boughner credit for $3,850.00 which he had furnished up to 1908 at the time of the accounting between Bowen and Boughner and also for various items of cash furnished to Bowen, and for money paid for insurance, repairs of fencing on the farm, painting the house, fixing the cistern, lumber, sand, taxes, labor, etc., amounting to $7,857.46. The master rejected a number of other items claimed by Boughner, saying, ''the proof fails to show that the items in the following schedule are for or that they inure to the permanent benefit, maintenance and up-keep of the property and the master therefore disallows same.'' The items disallowed were for labor, pipe joints, interest, seed, repairs on barn, fencing, purchase of fruit trees, clover seed, hardware, and many other items amounting in the aggregate to a sum more than $1,500.00. The commissioner also allowed other claims to Boughner which were granted by Bowen.

The master then charged Boughner with $240.00 per year rent for the farm for the years 1912, 1913, 1914, 1915, 1916, 1917 and up to March 4, 1918, making a total of $1,656.00, which sum added to $141.10 which Boughner conceded to Bowen, makes a total of $1,797.10, which said sum taken from the amount allowed Boughner, $7,857.46, leaves $6,060.36, as due Boughner according to the finding of the master and which finding he duly reported to the court, and the court after hearing exceptions confirmed in all respects except it allowed Boughner interest on each of certain sums from the date of payment thereof, which interest amounted to $122.61, said sum when added to the sum allowed by the master, $660.36, made a total of $6,743.15 due Boughner. Judgment in favor of Boughner was entered for this amount, and it was further adjudged that Bowen was the owner of the land subject to the mortgage lien of Boughner for the sum of $6,743.15 and directed a sale of the property for the satisfaction of said indebtedness if Bowen failed to make payment of said sum within sixty days. Bowen prayed an appeal complaining that the allowance of $240.00 a year which the court made him for rents for the use of the farm was altogether inadequate, and Boughner prayed a cross-appeal, complaining that the court did not allow him $1,500.00 which he avers he spent on lasting and valuable improvements on the farm.

The chancellor in his opinion delivered below said: ''Under the facts the court thinks that there can be but one conclusion arrived at, and that is that the whole

transaction is in the nature of a debt secured by mortgage, and the court so holds. The parties are entitled to a mutual accounting but the pleadings and proof are not in condition to admit of such accounting by the court. For this reason the cause will be referred to the master commissioner who will prepare a statement of the accounts between the parties.'' After exceptions were filed to the report of the master the lower court again very carefully considered the principal question involved, saying, ''At the request of counsel for defendant the court again has considered the principal question here involved, i. e., whether the transaction between the parties was a mortgage, and has come to the conclusion that the former ruling was correct.'' Thus the trial court after considering the matter twice came to the conclusion that the document executed by Bowen and wife to Boughner purporting to be an absolute deed was in fact and in effect only a mortgage and intended to secure Boughner in the repayment of the money which he had advanced from time to time to the plaintiff Bowen. The evidence is so unsatisfactory that we are not willing to disturb the finding of the chancellor on this point. It appears that he has given it careful consideration and has written and delivered two opinions. We concur in the finding of facts made by the chancellor, because we believe them supported by the weight of the evidence. It is our rule to sustain the finding of the chancellor upon questions of fact unless his finding be against the weight of the evidence, in which event a different finding will be made by this court. Hays v. Hays, 180 Ky. 790; Herzog, et al. v. Gipson, et al., 170 Ky. 325; Thomas v. Vallandingham, et al., 181 Ky. 649; Willoughby v. Reynolds, 182 Ky. 1; Superior Coal Co. v. Runyon, 184 Ky. 255; Kennedy v. Kennedy, 186 Ky. 549.

We have several times written that where an instrument was intended merely as a security for a debt, it is a mortgage though in form a deed absolute on its face, and we have further held that where there is a doubt as to whether an instrument is a mortgage or conditional sale, the instrument will be considered to be a mortgage. Frey v. Campbell, 3 S. W. 368, 8 Ky. Law Rep. 772; Bond v. Smith, 148 Ky. 531; Berry v. Berry, 9 Ky. Op. 598; Trimble v. McCormack, 15 S. W. 358.

Construing the written instrument between Bowen and Boughner as a mortgage, then Boughner was a mortgagee, and while he was in possession of the property from the year 1912 he was subject to the rules of law

governing mortgagees in possession of mortgaged property and was liable for rents and in certain instances was entitled to credit for repairs and improvements. In 19 R. C. L. 332, it is said that it is both the duty and the right of the mortgagee in possession to make reasonable repairs and he is entitled to be allowed in his settlement for sums disbursed for that purpose, with interest thereon. What are necessary and proper repairs must indeed depend upon the particular circumstances of each individual case, though it is settled that those which are merely ornamental, which are intended solely for the comfort and convenience of the mortgageee, or which are not necessary to preserve the property for the period during which the mortgagee held and intended to hold on entering but which were made solely that the property might bring a higher price on sale are not properly allowable. But disbursements made to render a house habitable, to enclose a field, to erect a temporary stable, and for other purposes, have been allowed as reasonable. The repairs for which disbursements were made must be affirmatively shown to be reasonable if allowance is to be made therefor.

A mortgagee in possession however will not be allowed to make improvements which will render it more difficult for the mortgagor to redeem by charging him with cost of improving the property. The general rule seems to be that a mortgagee in possession is entitled to be allowed for necessary repairs made by him for improvements in some instances, though not generally, for taxes and water rates paid by him, for sums expended in protecting the title to the property, and in some instances for insurance.

A mortgagee in actual personal possession of the mortgaged real estate is chargeable with the reasonable rental value thereof. If the use and occupation of the property are worth nothing, then the mortgagee in possession should not be charged with anything on this account. In every case the rental value of the property must be determined upon the basis of its condition at the time the mortgagee took possession and not its rental value in its enhanced condition after improvements have been placed on the property by him. 19 R. C. L., pages 334, 335 and 337; 27 Cyc. 1840; Brooks v. Breckinridge, 2 A. K. Mar. 335; Thorp v. Fritz's Admrx., 6 B. M. 6.

Bowen owed Boughner $3,850.00, according to their settlement made in 1908. After that Boughner furnished Bowen other money. This made the debt due Bough-

ner amount to approximately $4,000.00. If the rents of the farm in this case should be governed by the rule announced by this court in cases of rescission, as the trial court intimated it might be, then the interest on the investment or debt, $4,000.00, would amount, at six per cent, to $240.00 per year, the amount fixed by the chancellor as rents due Bowen. This, however, is not the rule governing in cases of this kind where the mortgagee is in possession. In such cases the mortgagee is chargeable with the reasonable rental value of the property during the time he has personal charge of it without respect to the vendable value of the property. From the evidence we are convinced that appellant Bowen has no good grounds of complaint at the allowance of $240.00 per year rental for the farm. In fact we believe that sum a liberal allowance to him because the farm had never rented for that amount so far as the evidence shows in any year previous to that, and in estimating the rental value we are not permitted to take into account the enhanced rental value which came to the place by reason of the improvements placed thereon by Boughner after he took possession in 1912, but we must consider the place as in the rundown condition in which he received it. So considered, $240.00 per year was its full rental value, according to the great weight of the evidence.

The master commissioner rejected a number of items in the claim of Boughner amounting in the aggregate to more than $1,500 because the proof did not sustain the claim. If the items expended by Boughner were merely for ornamental improvement or conveniences which did not enhance the value of the property and were made without the consent of Bowen, then he was not entitled to the allowance, and the burden was on him to show that the improvements were permanent and useful, adding to the value of the estate, and failing in this the master did no wrong in rejecting his claim and the chancellor on hearing the exceptions committed no error in disallowing the claim of appellee Boughner for such improvements as were not shown to be permanent and useful. It is a well known rule of law that a mortgagee in possession can not place improvements upon the mortgaged property which will increase the burden of debt under which the mortgagor labors without his consent, except where it is necessary to preserve the property or it will be greatly to the advantage of the mortgagor. Boughner being a mortgagee in possession had no right to increase the burden of Bowen by expending money on improve-

ments on the farm without the consent of Bowen. Miller v. Ward, 49 L. R. A., note 4, on page 128, also note 2, page 126; Hopkins v. Stephenson, 1 J. J. Marshall 341 (Ky.).

Although the evidence is not altogether satisfactory on both sides, we are unable, after a very careful review of the whole record, to find error prejudicial to the substantial rights of either appellant or appellee but are firmly of the opinion that the chancellor has not only dealt out justice in the case but has not erred as to the law.

The judgment is therefore affirmed both upon the original and cross appeal.

Judgment affirmed.