**Amos MOUNTS et al., Appellants and Cross-Appellees,**

**v.**

**Anne ROBERTS et al., Appellees and Cross-Appellants.**

Court of Appeals of Kentucky.

Feb. 12, 1965.

Henry D. Stratton, Pikeville, for appellants and cross-appellees.

Jack T. Page, Pikeville, for appellees and cross-appellants.

WADDILL, Commissioner.

The trial court determined that under the terms of a deed executed in 1904 by Anderson Mounts, and following the life estate of Rebecca Mounts (now deceased), each of Mounts' 7 sons and 3 daughters was entitled to an undivided ⅒ interest in the coal and each of his sons received an undivided ⅐ interest in the minerals other than coal underlying a certain tract of land. From a judgment accordingly entered Mounts' sons have appealed contending that the daughters are not entitled to any interest in the coal. One daughter of Mounts and the heirs and devisee of his two deceased daughters have cross-appealed contending they are also entitled to a remainder interest in all the minerals.

Omitting the description the 1904 deed reads as follows:

"THIS DEED OF CONVEYANCE made and entered into this 20th day of January, 1904, between Anderson Mounts of Pike County, Ky., party of the first part and Rebecca Mounts, his wife, of the second part.

"WITNESSETH:

"That the said party of the first part for and in consideration of One Hundred Dollars in hand paid, the receipt whereof is hereby acknowledged and for love and affection do hereby sell and convey all my property, both real and personal and all other effects together with all royalties due or to become due on account of a coal lease made by me to the Vulcan Coal Company, * * *.

"To have and to hold the same, together with all the appurtenances thereunto belonging, that is to say the said Rebecca Mounts is to hold and have full control of all of said property real and personal and all other royalties and effects hereinbefore mentioned so long as she remains the wife or widow of the said Anderson Mounts, party of the first part. And after the death or in case of remarriage of the said party of the second part then the said land is to convert [sic] to her lawful male children by the said party of the first part and after the death of the said male children then said land is to convert [sic] to their lawful heirs. And provided further that after the death or remarriage of the said Rebecca Mounts then her lawful heirs both male and female shall share equally all royalties then due or coming due thereafter on account of the said coal least [sic] hereinbefore mentioned. And provided further that after the death of said heirs then said royalties are to be paid to their lawful heirs.

"IN TESTIMONY WHEREOF the party of the first part has hereunto subscribed his name the day and year aforesaid."

his<br>
"Anderson x Mounts<br>
mark"

In concluding that the appellees have an interest in the coal, the trial court relied on an order entered in a prior action wherein Mounts' children had sought to cancel the life estate of Rebecca Mounts and collect damages for waste resulting from strip mining under a coal lease she had executed in 1948. The court concluded that she had no legal right to execute this lease and awarded damages. It is ap-

parent that the only issue presented in that case was whether strip mining constituted waste but the court also decided that the fee to the remainder of the coal and the coal mining rights had vested in each of the Mounts' children. However, any determination other than the adjudication of the issue raised in the former action is not res judicata of the entirely different issues raised in the instant action. Powell v. Bailey, Ky., 376 S.W.2d 532; Philpot v. Minton, Ky., 370 S.W.2d 402.

■ In the absence of ambiguity a written instrument will be strictly enforced according to its terms. McMahan v. Hunsinger, Ky., 375 S.W.2d 820; McIntire v. Marion Coal Co., 190 Ky. 342, 227 S.W. 298. The language of the deed under consideration is unambiguous. Each of Mounts' children was to receive an equal share of the royalties paid under the Vulcan Coal Company lease after the death of Rebecca. Since Vulcan surrendered its lease and ceased its mining operation on Mounts' property during the lifetime of Rebecca we conclude that the trial court erred in determining appellees' present interest in the coal.

■ On cross-appeal the appellees contend that, as to the mineral rights, the deed violates the rule against perpetuities since after the successive life estates the remainder would go to the heirs of the sons, some of whom could be born more than 21 years and 10 months after the death of persons living when the deed was executed. They therefore maintain that the remainder interest in all the mineral rights reverted to the grantor and, since he died intestate, should, after the termination of the sons' life estates, be distributed equally among the 10 children. The contention is sound and is in harmony with our decision in Taylor v. Dooley, Ky., 297 S.W.2d 905. The phrase "after the death * * * to their lawful heirs" in the 1904 deed when read in context is clearly not intended to be one of limitation as was the phrase "her heir after her death" considered in the instrument in-

volved in Kentland Coal & Coke Co. v. Blankenship, Ky., 300 S.W.2d 570. Cf. Combs v. Hounshell, Ky., 347 S.W.2d 550. The trial court erred in failing to award the appellees a remainder interest in the coal and other minerals.

The judgment is reversed on appeal and on cross-appeal with directions to enter a new one consistent with this opinion.